IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00495-PAB-MJW

REGISTRY SYSTEMS INTERNATIONAL, LTD.,

      Plaintiff,

v.

VINCENT HAMM,
KAREN HAMM,
AIM HIGH!, INC.,
KAIM CHIGH, LLC, and
1 DOMAIN SOURCE, LTD.,

      Defendants and Third Party Plaintiffs,

v.

EDWARD J. SWEENEY,
CHARLES A SWEENEY, and
CAPITAL NETWORKS, PTY., LTD., A/K/A PACNAMES, LTD.,

      Third Party Defendants.

_____

**ORDER GRANTING IN PART, DENYING IN PART, AND WITHHOLDING JUDGMENT
IN PART ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**
_____

      This contract and tort case is presently before the Court on two motions for

summary judgment.  The first is a motion for partial summary judgment by defendants

and third party plaintiffs Vincent Hamm, Aim High!, Inc., and 1 Domain Source, Ltd.

[Docket No. 101].  These defendants seek summary judgment on five of the seven

claims in which at least one of them is named.  The second motion is one for summary

judgment by defendants Karen Hamm and Kaim Chigh, LLC [Docket No. 102].  These

defendants seek summary judgment on all seven claims in which at least one of them is named.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are complex and somewhat unclear.  To the extent that the Court is able to, the undisputed facts will be fleshed out in the discussions of the individual claims below.  However, for the sake of introduction, this case arises out of a soured business relationship between plaintiff Registry Systems International, Ltd. ("RSI") and its owner Edward Sweeney, on the one hand, and defendants Vincent and Karen Hamm, on the other.  For several years, the parties collaborated in some way on internet-related businesses.  At one point, they turned their attention to the business of internet domain name registration – that is, the business of helping others acquire and register particular website addresses.  The exact contours of the parties' relationship is highly contested.  However, it is clear that at some point Vincent Hamm, Karen Hamm, or both formed a number of entities used for purposes of the domain name registration business, including Internet Equipment Sales & Holdings, LLC, Internet Name Register, Inc., Domain Monkeys, LLC, Web Business, LLC, 1 Domain Source, Ltd., and Aim High!, Inc.  It is also clear that, in the course of their business relationship, Vincent Hamm and Edward Sweeney drafted or signed various documents related to the ownership of several of these entities that were signed by some combination of the parties.  As the business relationship unraveled, amenable departure apparently was not possible.  Instead, accusations of unfair dealings and misfeasance surfaced and conflict ensued.

On March 10, 2008, plaintiff RSI filed a verified complaint [Docket No. 1] with this Court listing eight claims for relief and naming the following defendants: Vincent Hamm, Karen Hamm, Aim High!, Inc., Kaim Chigh, LLC, 1 Domain Source, Ltd., and Kim Keeling.  The claims are: (1) breach of contract, originally asserted against all of the defendants; (2) conversion, originally asserted against all of the defendants; (3) deceptive trade practices in violation of the Colorado Consumer Protection Act, originally asserted against all of the defendants; (4) tortious interference with prospective business advantage, originally asserted against all of the defendants; (5) breach of fiduciary duty, originally asserted against Vincent Hamm and Karen Hamm; (6) unjust enrichment, originally asserted against Kaim Chigh; (7) unjust enrichment, originally asserted against 1 Domain Source; and (8) a claim for declaratory relief, originally asserted against all of the defendants.

Through their answer and subsequent amendments, defendants Vincent Hamm, Karen Hamm, Aim High!, Kaim Chigh, and 1 Domain Source filed a number of counterclaims against RSI and third-party claims against affiliated individuals, Edward and Charles Sweeney.  The Clerk of the Court entered default against Charles Sweeney [Docket No. 54] and RSI eventually stipulated to the dismissal of its claims against defendant Kim Keeling [Docket No. 222].  Therefore, the parties with live controversies in this case are RSI, Vincent Hamm, Karen Hamm, Aim High!, Kaim Chigh, 1 Domain Source, and Edward Sweeney.

On March 30, 2009, defendants and third party plaintiffs Vincent Hamm, Aim High!, and 1 Domain Source filed a motion seeking summary judgment on a number of RSI's claims.  *See* Defs., Counterclaimants, and Third-Party Pls. Vincent Hamm, Aim

High!, Inc. and 1 Domain Source, Ltd.'s Mot. for Partial Sum. J. [Docket No. 101] ("Def. Vincent Hamm's Mot. for Sum. J.").  That same day, defendants Karen Hamm and Kaim Chigh filed a motion seeking summary judgment on all of the claims RSI asserted against them.  *See* Defs., Counterclaimants, and Third-Party Pls. Karen Hamm and Kaim Chigh, LLC's Mot. for Sum. J. [Docket No. 102] ("Def. Karen Hamm's Mot. for Sum. J.").

Due to the complexity and disorganization of claims presented, the Court conducted two hearings on the motions for summary judgment, one on June 24, 2009 and the other on July 30, 2009.  The first hearing focused on the breach of contract claim and the conversion and tortious interference claims.  Following presentations and argument by the parties, the Court ruled on part of RSI's breach of contract claim.  The Court reserved ruling on a portion of that claim and on the rest of the motion for summary judgment.  During the July 30, 2009 hearing, the Court heard argument on the remaining claims covered by the motions for summary judgment, reserving ruling on those claims as well.

For the sake of clarity of the record going forward, the present order will address all aspects of the motions for summary judgment.  The present order incorporates the Court's June 24, 2009 oral ruling in its entirety but, if the oral ruling conflicts with the present order, the present order shall govern.

## II.  ANALYSIS

### A.  Summary Judgment

The defendants argue, and RSI does not object, that the law of Colorado governs the substantive issues.  Therefore, the law of Colorado will be applied to the contract and tort claims in this case.  *Cf. Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").  However, federal law governs procedural matters which include the standards for summary judgment.  *See Morris v. Travelers Indem. Co. of Am.*, 518 F.3d 755, 758 (10th Cir. 2008) ("In diversity cases, the laws of the forum state govern our analysis of the underlying claims, while federal law determines the propriety of the district court's summary judgment.").

According to Federal Rule of Civil Procedure 56(c), a court should grant summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  Rule 56(d) explains that

> [i]f summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. . . . It should then issue an order specifying what facts – including items of damages or other relief – are not genuinely at issue. The facts so specified must be treated as established in the action.

In pursuing summary judgment, the moving party generally bears the initial burden of showing the absence of a genuine dispute concerning a material fact in the

case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." (internal quotation marks omitted)).  However, "[w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

"Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115 (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)).  However, to be clear, "it is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit."  *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009).

Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

A court may not consider all proffered evidence when ruling on a summary judgment motion; only admissible evidence may enter the analysis. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). When viewing the permissible evidence, courts are to make reasonable inferences therefrom in the light most favorable to the nonmoving party. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).

## B. RSI's Breach of Contract Claim

The elements of a breach of contract claim under Colorado law are: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Generally speaking, each one of the four elements required to make a prima facie case for breach of contract is addressed as a question of fact. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (Colo. 1986) ("[I]t is for the jury to determine whether the parties have entered into a contract."); *Lake Durango Water Co. v. Public Utilities*

*Comm'n*, 67 P.3d 12, 21 (Colo. 2003) (question of whether either party sufficiently

performed under a contract is a question of fact); *Terrones v. Tapia*, 967 P.2d 216, 218

(Colo. App. 1998) (indicating that questions of both the existence and the amount of

damages are generally left to the jury).

        The first step in establishing the existence of a contract is a showing that it was

properly formed.  Contract formation requires mutual assent to an exchange between

competent parties – where an offer is made and accepted – regarding a subject matter

which is certain, and for which there is legal consideration.  *See Industrial Prods. Int'l,*

*Inc. v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. App. 1997).  Under Colorado law, a

benefit to the promisor or detriment to the promisee, however slight, can constitute

consideration.  *W. Fed. Sav. & Loan Ass'n v. Nat'l Homes Corp.*, 445 P.2d 892, 897

(Colo. 1968).  Furthermore, "a presumption arises from the existence of a signed written

instrument that it is supported by adequate consideration."  *Grant v. Oten*, 626 P.2d

764, 765-66 (Colo. App. 1981).  However, "this presumption is rebuttable.  And, this

presumption exists only so long as there is no evidence of lack of consideration.  Thus,

when evidence tending to prove lack of consideration is introduced, the issue of

whether there was valid consideration becomes a question of fact for the trier of fact."

*Grant*, 626 P.2d at 766 (internal citation omitted).

        In its complaint, RSI asserts its breach of contract claim against "All Defendants."

*See* Verified Compl. for Damages and Injunctive Relief [Docket No. 1] ("Verified

Compl.") at 15-16.  However, because of RSI's lax and generalized approach to

pleading and arguing its breach of contract claim, it was unclear which contracts and

which defendants truly were at issue.  After repeated prompting by the defendants and the Court, RSI finally clarified which parties it believes breached which alleged agreements.  Through its responses to the motions for summary judgment, the final pretrial order, and a status report, RSI has clarified that it intends to assert its breach of contract claim against Vincent Hamm and Aim High! only.  *See* Pl. Registry Systems International, Ltd.'s Brief in Opp'n to Defs. Vincent Hamm, Aim High, Inc. and 1 Domain Source, Ltd's Mot. for Sum. J. [Docket No. 117] ("Pl.'s Resp. to Def. Vincent Hamm's Mot.") at 5; Pl.'s Resp. Br. to Karen Hamm and Kaim Chigh, LLC's Mot. for Sum. J. [Docket No. 118] ("Pl.'s Resp. to Def. Karen Hamm's Mot.") at 6; Final Pretrial Order [Docket No. 138] at 4-5; Pl. Registry Systems International, Ltd's Status Report Regarding Claims [Docket No. 169] ("Pl.'s Status Report") at 1.  At the first hearing on the motions, RSI clarified further that it intends to enforce each contract against only those parties who appear both in this case and in the respective contract.

RSI is attempting to enforce six alleged contracts against either Vincent Hamm, Aim High!, or both:

- A document dated May 10, 2004 assigning service contracts from Aim High! to RSI, signed by Vincent Hamm on behalf of Aim High! and Edward Sweeney on behalf of RSI (the "May 10, 2004 Aim High! Agreement").  *See* Def. Vincent Hamm's Mot. for Sum. J., ex. C.

- A document dated May 10, 2004 assigning service contracts from Domain Monkeys, LLC to RSI, signed by Vincent Hamm on behalf of Domain Monkeys and Edward Sweeney on behalf of RSI (the "May 10, 2004 Domain Monkeys Agreement"). *See* Def. Vincent Hamm's Mot. for Sum. J., ex. D.

- A "Memorandum of Understanding" dated September 6, 2006 regarding various aspects of their business relationship, signed by Vincent Hamm on his own behalf and on behalf of Aim High! and by Edward Sweeney on his own behalf and on behalf of RSI (the "Memorandum of Understanding" or "MOU"). *See* Def. Vincent Hamm's Mot. for Sum. J., ex. E.

- A document dated August 14, 2007 regarding the payment of $17,100 to be paid to Edward Sweeney by Vincent Hamm (the "$17,100 Agreement").  The agreement is notarized and is signed by both individuals and states that, "[t]his Agreement is personal to the parties named and cannot be assigned by any party without the express written consent of the other parties."  *See* Def. Vincent Hamm's Mot. for Sum. J., ex. F.

- A document dated August 14, 2007 regarding the payment of $27,719 to be paid to Capital Networks Pty Ltd. by Vincent Hamm (the "$27,719 Agreement").  The agreement is notarized and is signed by Vincent Hamm individually and Edward Sweeney on behalf of Capital Networks and states that, "[t]his Agreement is personal to the parties named and cannot be assigned by any party without the express written consent of the other parties."  *See* Def. Vincent Hamm's Mot. for Sum. J., ex. G.

- A document dated August 10, 2007 signed by Vincent Hamm only which states that "in [his] own right and on behalf of Aim High, Inc!, K. Hammsmith, and other related parties hereby transfer[s] all right, title and interest in the shares of (where applicable) and each of the following entities to Edward Sweeney and hereby appoint the said Edward Sweeney of 24 Mountain Drive, Thredbo NSW Australia as both a member with 100% interest and director/manager/organizer with unlimited powers of the following entities: Internet Equipment Sales & Holdings, LLC; Domain Monkeys, LLC; Web Business, LLC; and Internet Name Register, Inc." (the "Company Ownership Transfer Agreement" or "COTA").  *See* Def. Vincent Hamm's Mot. for Sum. J., ex. H.

A review of RSI's complaint demonstrates, however, that it only pled breach of three of these agreements.  The complaint explains that "[t]he May 10, 2004 Aim High! Agreement, the May 10, 2004 Domain Monkeys Agreement, and the Company Ownership Transfer Agreement constitute binding agreements between the various parties to those agreements."  Verified Compl. ¶ 45.  The complaint then proceeds to allege that "[b]y engaging in the conduct described above, Defendants have breached these agreements in numerous and ongoing material ways" and that "[b]y engaging in the conduct alleged, the Defendants have breached their contracts of service with the Plaintiff."  Verified Compl. ¶¶ 46, 47.

10

It is not entirely clear what RSI intended by the phrase "contracts of service."  It may refer to the two contracts regarding the provision of domain name services, that is, the May 10, 2004 Aim High! Agreement and the May 10, 2004 Domain Monkeys Agreement.  *See, e.g.*, Verified Compl. ¶ 12.a, 12.b.  RSI also may be referring to the informal, unwritten agreements which RSI has referenced during its litigation of the case.  Finally, it may refer to the document entitled "Memorandum of Understanding." The complaint describes the Memorandum of Understanding, or MOU, as a document in which "Aim High! and Vincent Hamm confirmed their existing status as nominees and trustees and agreed to their respective ongoing rights and obligations as nominees and trustees regarding these various companies and agreements."  Verified Compl. ¶ 13. The complaint also cites the MOU in various places as supporting evidence reinforcing the validity of the May 10, 2004 Aim High! Agreement and the May 10, 2004 Domain Monkeys Agreement.  *See* Verified Compl. ¶¶ 12.a, 12.b, 12.c, 20.

However, nothing in the complaint indicates that RSI intended to characterize the MOU as a "contract of service."  Indeed, when the Court pressed RSI at the June 24, 2009 hearing to identify the place in the complaint where a breach of the MOU was alleged, RSI did not refer to the "contracts of service" language.  Instead, RSI claimed that breach of the MOU should be inferred from other facts in the complaint.  For example, RSI argued that it is significant that the MOU is closely connected to the Company Ownership Transfer Agreement.  RSI also urged that it is sufficient that the complaint discusses the MOU generally in the allegations in the main section of the complaint, allegations which the breach of contract claim incorporated by reference.

The Court finds neither of these arguments to be persuasive.  Presented as it is, the Complaint did not give the defendants adequate notice that they faced a breach of contract claim regarding the MOU.  *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires . . . a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." (internal quotation marks and omission marks omitted)).  Rather than properly pleading a breach of the MOU or seeking to amend its complaint, RSI sought to bring the purported breach of this agreement into the purview of this case through discovery and the motions for summary judgment.  However, plaintiff may not amend its complaint by fiat.  Federal Rule of Civil Procedure 15 describes the methods by which a complaint may be amended.  Having not followed those procedures, RSI's breach of contract claim will be litigated as pled.

Because RSI's complaint does not plead a breach of the Memorandum of Understanding, such a claim is not part of this case going forward.  The same is true for the $17,100 Agreement and the $27,719 Agreement.  Under no reasonable interpretation of RSI's complaint are these purported contracts alleged to be breached.  Therefore, as I explained in my June 24, 2009 oral ruling, because RSI's breach of contract claim does not include the $17,100 Agreement and the $27,719 Agreement, these contracts are not at issue in this case either.[1]

---

[1]  As noted in my oral ruling, even if the Court were to interpret the complaint as invoking these alleged contracts, RSI is not named in either one and has not produced evidence demonstrating that it is otherwise entitled to enforce them.

Furthermore, and again as explained in the Court's June 24, 2009 oral ruling, RSI's breach of contract claim regarding the May 10, 2004 Domain Monkeys Agreement has been dismissed because that document is not enforceable against any defendant in this action.  Finally, because RSI has indicated that it did not intend to allege a breach of contract against defendants Karen Hamm, Kaim Chigh, or 1 Domain Source, its breach of contract claim is dismissed as to these three parties.  That leaves two potential contracts in this action – the May 10, 2004 Aim High! Agreement and the Company Ownership Transfer Agreement – which RSI alleges two potential defendants – Vincent Hamm and Aim High! – have breached.

### 1.  The May 10, 2004 Aim High! Agreement

As noted in the Court's June 24, 2009 oral ruling, although Vincent Hamm signed the May 10, 2004 Aim High! Agreement, he did so on behalf of Aim High!, not in his personal capacity.  Because, generally speaking, "a contract can be enforced only against a party to that contract," *Mitten v. Weston*, 615 P.2d 60, 61 (Colo. App. 1980), the May 10, 2004 Aim High! Agreement is not enforceable against Mr. Hamm personally.  The Court, therefore, granted Mr. Hamm summary judgment regarding the claimed breach of this contract.

The May 10, 2004 Aim High! Agreement is, however, by its express terms applicable to Aim High!.  Because genuine disputes as to material facts continue to exist regarding the formation of this agreement, including the extent to which it was supported by consideration, summary judgment is inappropriate with respect to Aim High!.  There appears to be little doubt or argument regarding the fact that RSI received a benefit under this agreement in the form of the assigned contracts.  However, the

13

existence of consideration in the opposite direction – i.e., a benefit received by Aim High! or a detriment incurred by RSI – is less clear.

In his deposition, Edward Sweeney stated that he was unaware of any benefit that Aim High! received from this contract.  See Def. Vincent Hamm's Mot. for Sum. J., ex. A (Videotaped Dep. of Edward Justin Sweeney - Volume 1 (March 23, 2009)) at 9 (internal pagination: 196).  However, as RSI asserts in its response to the motion for summary judgment, the contract itself suggests consideration sufficient to support a claim: "[RSI] is willing to assume responsibility for providing continued registration services to customers of [Aim High!]"; RSI agreed to assume all obligations to service Aim High!'s customers and to indemnify Aim High! from all liabilities;[2] RSI agreed to repay certain fees and expenses that Aim High! had previously incurred; and Aim High! was able to wind up its business.  See Pl.'s Resp. to Def. Vincent Hamm's Mot. at 6-7. Therefore, with evidence both for and against a conclusion that consideration existed, this is a question of fact for the jury.  Accordingly, RSI's breach of contract claim with respect to the May 10, 2004 Aim High! Agreement may proceed against Aim High!.

## 2. The Company Ownership Transfer Agreement

The final agreement that RSI's complaint alleged was breached is the Company Ownership Transfer Agreement or COTA.[3]  The COTA purports to "hereby transfer all right, title and interest in the shares of (where applicable) and each of the following

---

[2] The language of the agreement in this regard appears to be somewhat confused in its drafting.  It is not clear what the indemnification language cited by RSI actually provides.

[3] During the June 24, 2009 oral ruling on the motions for summary judgment, the Court reserved ruling on the portion of RSI's claim dealing with the COTA.

entities to Edward Sweeney and hereby appoint the said Edward Sweeney of 24 Mountain Drive, Thredbo NSW Australia as both a member with 100% interest and director/manager/organizer with unlimited powers of the following entities: Internet Equipment Sales & Holdings, LLC; Domain Monkeys, LLC; Web Business, LLC; and Internet Name Register, Inc."  Def. Vincent Hamm's Mot. for Sum. J., ex. H.  Vincent Hamm signed the COTA "in [his] own right and on behalf of Aim High!."  Def. Vincent Hamm's Mot. for Sum. J., ex. H.  Therefore, unlike the May 10, 2004 Aim High! Agreement, the COTA might be enforceable against either of these defendants.

RSI, the sole plaintiff in this case, is not named in the COTA.  However, RSI alleges in its complaint that "[o]n March 3, 2008, that nominee and trustee transferred to RSI all right and title to the Company Ownership Transfer Agreement."  Verified Compl. ¶ 23.  In a deposition, Edward Sweeney claimed that the COTA was assigned to RSI. *See* Def. Vincent Hamm's Mot. for Sum. J., ex. A (Videotaped Dep. of Edward Justin Sweeney - Volume 2 (March 24, 2009)) at 17-18 (internal pagination: 324-26).  On July 29, 2009, without leave of the Court, RSI filed a "supplement" to its brief in opposition to Mr. Hamm's motion for summary judgment which purportedly addresses the assignment question [Docket No. 202].  In this supplement, filed three months after the original opposition brief and a month after the hearing on the matter, RSI offers to the Court for the first time what purports to be a written assignment of the COTA.  The assignment is dated March 3, 2008.  In response to RSI's supplement, defendants submitted another written assignment that they purportedly received from RSI on May 19, 2009 [Docket No. 204].  This document was dated May 6, 2009, more than a year after the case was filed and more than a month after Mr. Sweeney testified that the

contract in question had already been assigned by written instrument.  According to defendants, RSI did not produce the March 3, 2008 document until June 11, 2009, after being ordered to do so by the Court.  Ultimately, as troubling as the documentation of the purported assignment may be, the question of the existence of an assignment cannot be determined at summary judgment.

"No particular formalities are necessary to effect a valid assignment.  However, the intent to make the assignment must be apparent, and that intent may be reflected by the written instruments executed by the parties or inferred from the acts and conduct of the assignor."  *Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835, 845 (Colo. App. 2007) (internal quotation marks and omission marks omitted).  Ultimately, "[w]hether the parties had the requisite intent to effect an assignment is a question of fact . . . ." *Phoenix Capital, Inc*, 176 P.3d at 845.  Therefore, there exists a genuine dispute regarding the issue of assignment which will be settled by the jury.

Defendants Vincent Hamm and Aim High! also argue that they are entitled to judgment as a matter of law on the question of whether they breached the COTA because there is no separate, independent consideration supporting that purported contract.  It is clear from the face of the document that Edward Sweeney received a benefit from this contract in the form of the purported ownership of the named entities. Defendants, however, argue that consideration in the other direction – that is, a benefit received by Vincent Hamm or detriment incurred by Edward Sweeney – is lacking.  RSI admits that the COTA does not evince such consideration on its face.  *See* Pl.'s Resp. to Def. Vincent Hamm's Mot. at 9.  Rather, it contends that the COTA is supported by past consideration, the same consideration that supposedly supported an earlier

16

agreement, the Memorandum of Understanding.  *See* Pl.'s Resp. to Def. Vincent

Hamm's Mot. at 9.

Generally speaking, "something that has been given before the promise was

made and, therefore, was neither induced by the promise nor paid in exchange for it,

cannot, properly speaking, be sufficient, valid, legal consideration."  4 Richard A. Lord,

Williston on Contracts § 8:11 (4th ed. 2009).  However, Colorado law recognizes that "a

promise is enforceable if supported by a past consideration rendered at the promissor's

request."  *J.N. Sargent v. A.E. Crandall*, 352 P.2d 676, 677 (Colo. 1960).  This

exception's relevance to the present case is dubious.  It is not clear what "request"

Vincent Hamm or Aim High! made of Edward Sweeney, the original promisee.  RSI lists

various promises it and Edward Sweeney made in the MOU.  However, according to the

record, the MOU was executed at the request of Edward Sweeney and RSI, not Vincent

Hamm or Aim High!.  Furthermore, to the extent that Vincent Hamm or Aim High! made

any requests of RSI in the MOU, those requests were coupled with reciprocal

obligations.  Therefore, the MOU itself will not serve as consideration for the COTA.

However, as noted above, "a presumption arises from the existence of a signed

written instrument that it is supported by adequate consideration."  *Grant*, 626 P.2d at

765-66.  The COTA is signed by Mr. Hamm on behalf of himself and Aim High! and,

although the MOU will not serve as consideration for the later-executed COTA, similar

obligations to those discussed in the MOU – continued business relations,

compensation, and so forth – may.  It appears from the record that the parties

continued their relationship beyond the MOU and to the extent that similar promises

were exchanged, they may serve as consideration for the COTA.  Furthermore,

defendants have represented to the Court that the reason Mr. Hamm signed several of the alleged agreements was to facilitate a scheme for avoiding the payment of taxes. Because evidence tending to prove both the existence and the lack of consideration has been introduced, the issue proceeds to the trier of fact. *See Grant*, 626 P.2d at 766. Because questions regarding material facts persist, such as the existence of a valid assignment and consideration supporting the COTA, summary judgment is not appropriate with respect to Vincent Hamm or Aim High! on this portion of RSI's breach of contract claim.

### C. RSI's Conversion Claim

In its complaint RSI also asserts a claim for conversion against all of the defendants. RSI later clarified that it intended to assert this claim against only three of the defendants: Vincent Hamm, Aim High!, and 1 Domain Source. *See* Pl.'s Resp. to Def. Vincent Hamm's Mot. at 14; Pl.'s Resp. to Def. Karen Hamm's Mot. at 7; Pl.'s Status Report at 2. Therefore, as a preliminary matter, defendants Karen Hamm and Kaim Chigh are entitled to summary judgment on RSI's conversion claim.

As for the remaining defendants, RSI's conversion claim alleges that the defendants seized control of the "Domain Registrar Companies." Verified Compl. ¶ 51. These are entities which Vincent Hamm allegedly formed – Internet Equipment Sales & Holdings, LLC, Internet Name Register, Inc., Domain Monkeys, LLC, Web Business, LLC – but of which RSI argues it is the rightful owner. RSI also claims that Vincent Hamm, Aim High!, and 1 Domain Source improperly seized control of the assets of these entities: domain name registration agreements with an international registration body known as ICANN, websites, and related equipment and assets used in the

operations of the domain name businesses run by the Domain Name Companies.
Verified Compl. ¶ 51.  Through the hearing on the motions for summary judgment, it
has become clear that by "seized" RSI means that the defendants did not relinquish
these entities as they were allegedly obligated to do.  RSI argues that this obligation
finds its source in various contracts and understandings between the parties or,
alternatively, in the fiduciary relationship between Mr. Hamm and RSI.

The tort of conversion is defined as any distinct, unauthorized act of dominion or
ownership exercised by one person over personal property belonging to another.
*Glenn Arms Assocs. v. Century Mortgage & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo.
App. 1984) (citing *Byron v. York Inv. Co.*, 296 P.2d 742, 745 (Colo. 1956).  "An action
for damages for the conversion of personal property cannot be maintained unless
plaintiff had a general or special property in the personalty converted, coupled with
possession or the immediate right thereto."  *Byron*, 296 P.2d at 745.

RSI argues that it had an immediate right to possess the personal property in
question.  Defendants, in turn, urge the Court to find that RSI's conversion claim is
precluded by the economic loss rule: a party suffering only economic loss from the
breach of an express or implied contractual duty may not assert a tort claim for such a
breach absent an independent duty of care under tort law.  *Town of Alma v. Azco
Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).

The character of a particular duty and the applicability of the economic loss rule
is a question of law.  *Carder, Inc. v. Cash*, 97 P.3d 174, 183 (Colo. App. 2003) ("The
court must determine, at the outset of the lawsuit, the type of duty that has allegedly

been breached."). For a duty to qualify as "independent" of a contract, and thus fall outside of the economic loss rule, two conditions must be met: "[f]irst, the duty must arise from a source other than the relevant contract[;] [s]econd, the duty must not be a duty also imposed by the contract." *Haynes Trane Serv. Agency, Inc. v. American Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (internal citation omitted).

RSI argues that the defendants have converted its property by not transferring it when requested to do so. The duty to transfer these assets is the subject of various alleged agreements which RSI seeks to enforce through this action. To the extent that defendants' alleged duty to transfer these assets arises from a contract, the economic loss rule would bar RSI's conversion claim.[4] The defendants, however, argue that the contracts which contain the duty in question are unenforceable for lack of consideration, a question which the Court leaves to the jury. RSI argues, and defendants concede, that if the contracts are found to be unenforceable, the economic loss rule would not apply in this case. Further complicating matters, due to RSI's failure to properly plead at least four of these alleged agreements, their validity will remain an open question.

Therefore, because the issue of the enforceability of the contracts which allegedly implicate the economic loss rule remains at issue and because RSI asserts that its conversion claim represents an alternative theory of relief, summary judgment on RSI's conversion claim based on the economic loss rule is not appropriate.

---

[4] Indeed, long before the Colorado Supreme Court adopted the economic loss rule in *Town of Alma*, it was law in Colorado that a plaintiff may not maintain a conversion claim for what is essentially a breach of contract. *Brown v. Rennels*, 539 P.2d 1312, 1314 (Colo. App. 1975) (citing *Byron*, 296 P.2d 742).

20

Because the contract claims cannot be disposed of on summary judgment, neither can the tort claims which assert arguably parallel duties.  Therefore, RSI's conversion claim proceeds as to Vincent Hamm, Aim High!, and 1 Domain Source.

### D.  RSI's Tortious Interference with Prospective Business Advantage Claim

In its complaint, RSI asserts a claim for tortious interference with prospective business advantage against all of the defendants.  RSI later clarified that it intended to assert this claim against only some of the defendants: Vincent Hamm, Aim High!, and 1 Domain Source only.  *See* Pl.'s Resp. to Def. Vincent Hamm's Mot. at 14; Pl.'s Resp. to Def. Karen Hamm's Mot. at 7; Pl.'s Status Report at 2.  Therefore, defendants Karen Hamm and Kaim Chigh are entitled to summary judgment on RSI's tortious interference claim.

One who intentionally and improperly interferes with another's prospective contractual relation is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.  *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995); *MDM Group Assocs., Inc. v. CX Reinsurance Co. Ltd.*, 165 P.3d 882, 886 (Colo. App. 2007).  Tortious interference with a prospective business relation requires a showing of intentional and improper interference preventing formation of a contract.  *Amoco Oil Co.*, 908 P.2d at 500.  Furthermore, "[i]nterference with another's prospective contractual relation is tortious only if there is a reasonable likelihood or reasonable

probability that a contract would have resulted." *MDM Group Assocs., Inc.*, 165 P.3d at 886.

RSI alleges in its complaint that, "[b]y diverting all traffic from the domain registrar web sites owned and operated by RSI, Defendants have diverted sales from RSI and thereby improperly interfered with RSI's prospective contractual relations by preventing RSI from acquiring or continuing its prospective relations with domain registrar consumers." Verified Compl. ¶ 64. The story told through the motions for summary judgment presents a somewhat different picture. RSI has admitted that the contracts with which defendants allegedly interfered are the contracts between the entities operated by Mr. Hamm and the customers of those entities. RSI also admitted at the July 30, 2009 hearing that RSI did not directly control or operate these entities. Thus, the theory behind RSI's tortious interference claim appears to be that the defendants, by not transferring the entities, prevented RSI from contracting with the customers of those entities through those entities.

There is no indication in the evidence RSI has cited that any customer ceased or declined to contract with the domain registration companies at issue in this case. Nor does RSI cite any support for the proposition that these customers would have otherwise contracted directly with RSI. In fact, RSI has failed to identify a single situation in which there was a reasonable likelihood or reasonable probability that a direct contract between one of these customers *and RSI* would have resulted. Instead, RSI argues that it, not the defendants, should be indirectly benefitting from these contracts. However, because there is no indication that the defendants thwarted any

22

contractual relation that would have otherwise been formed or extended, RSI's claim for tortious interference is unfounded.

RSI's tortious interference theory has another problem: it is attempting to bring a claim on behalf of entities before RSI's ownership of them has been established.  This approach has a number of jurisdictional pitfalls.  First, if RSI was in fact the owner of all of the contested entities at the time it filed the case, the Court's diversity jurisdiction over this matter would fail.  One of these entities, defendant 1 Domain Source, is a limited liability company ("LLC") formed under Colorado law.  If RSI, an alien corporation, was the sole owner and member of this LLC on the date the complaint was filed, then RSI's alien citizenship would be imputed upon 1 Domain Source for diversity purposes.  *See Hale v. MasterSoft Int'l Pty. Ltd.*, 93 F. Supp. 2d 1108, 1112 (D. Colo. 2000) ("[A] limited liability company is a citizen of the states of which its members are citizens.").  If this were so, however, aliens would appear on both sides of the case without United States citizens on both sides and complete diversity would not exist. *See Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1345 (10th Cir. 2000) (courts interpreting § 1332(a)(2) require "United States citizens on both sides of an action between foreign citizens").  On the other hand, where "[t]he only way plaintiffs could become members of [an LLC] is for the plaintiffs to prevail and obtain relief in the district court," their citizenship is not imputed upon the LLC.  *Symes v. Harris*, 472 F.3d 754, 759 (10th Cir. 2006).  When prompted by the Court on this issue, RSI conceded that the Hamms owned these entities.  *See* Pl. Registry Systems International Ltd.'s Resp. to the Court's July 24, 2009 Order to Show Cause [Docket No. 203]; *see also*

23

Def. Karen Hamm's Mot. for Sum. J. ¶¶ 10, 11, 12, 13, 15, *admitted at* Pl.'s Resp. to Def. Karen Hamm's Mot. ¶¶ 10, 11, 12, 13, 15.  Therefore, as was the case in *Symes*, because RSI's ownership of the entities at issue and their assets is prospective – that is, contingent on the outcome of this case – RSI's citizenship is not imputed upon 1 Domain Source and the Court's diversity jurisdiction is not undermined.

In the course of the discussion above, RSI also admitted that in filing this action it was faced with a conundrum in how to frame a case in which it was trying to sue on behalf of entities it did not control.  One of the challenges was diversity.  If RSI were to sue on behalf of the entities to which it claims a right, RSI reasoned that it would have to list those entities as plaintiffs.  In this case, although it is unclear exactly which entities RSI claims were injured by the defendants' alleged tortious interference, each entity creates potential jurisdictional problems.  If Internet Equipment Sales & Holdings, LLC, Internet Name Register, Inc., Domain Monkeys, LLC, Web Business, LLC, 1 Domain Source, or Aim High! were listed as plaintiffs in this action, complete diversity would not exist because, like the Hamm defendants, these entities are citizens of Colorado.

In seeking to avoid the jurisdictional pitfalls discussed above, RSI listed only itself as a plaintiff to this action.  In doing so, however, RSI has entangled itself in other jurisdictional snags.  RSI conceded that while it may have an unadjudicated right to own the entities in question, the entities were technically owned by the defendants at the time of filing.  As a result, issues of standing and ripeness now confront RSI with respect to its tortious interference claim.

Issues of justiciability such as ripeness and standing impact the Court's subject-matter jurisdiction and, therefore, the Court has a duty to address them independent of whether they are raised by the parties. *Morgan v. McCotter*, 365 F.3d 882, 887 (10th Cir. 2004). In order to show standing necessary to invoke federal court jurisdiction, a party must demonstrate three things:

> (1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court"; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the "prospect of obtaining relief from the injury as a result of a favorable ruling" is not "too speculative."

*In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1101 (10th Cir. 2001) (quoting *Northeastern Fla. Chapter of the Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 663-64 (1993)).

Because RSI admits that it is not the owner of these entities until this case establishes that fact, RSI does not have standing to assert that someone has tortiously interfered with the prospective contractual relations of these entities. As a result, RSI does not satisfy any of the three standing elements listed above. If any injury exists regarding the tortious interference claim, it is speculative at this point. Furthermore, to the extent that RSI could establish an injury in this case, that injury will not be fairly traceable to the defendants' involvement in the contractual relations between the domain registration companies and their customers. Finally, a conclusion that the defendants tortiously interfered with the domain registration companies' prospective

contractual relations would not redress any injury to RSI given that RSI does not presently own or control these entities.

Although RSI has not asserted such a theory, federal jurisprudence allows for third-party standing in certain circumstances.  Under the doctrine of "third-party" standing, a plaintiff who otherwise demonstrates an injury in fact may assert the rights of others not before the court if "the party asserting the right has a 'close' relationship with the person who possesses the right [and] . . . there is a 'hindrance' to the possessor's ability to protect his own interests."  *Aid for Women v. Foulston*, 441 F.3d 1101, 1111-12 (10th Cir. 2006) (citing *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)) (internal citations and quotation marks omitted).  This is not the typical third-party standing case.  Both the close relationship in this case and the "hindrance" are the fact that RSI does not control the entities whose rights it seeks to vindicate.  Allowing this claim to go forward would essentially wrest control of these entities away from the defendants in the context of a standing analysis.  Not only is this improper in terms of standing, it also implicates the other justiciability doctrine mentioned above.

Even if RSI did have standing to assert a tortious interference claim, any injury to RSI based upon an alleged injury to the domain registration companies is impermissibly inchoate.  "In order for a claim to be justiciable under Article III, it must present a live controversy, ripe for determination, advanced in a clean-cut and concrete form."  *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (citing *Renne v. Geary*, 501 U.S. 312, 322 (1991)) (internal quotation marks omitted).  The ripeness inquiry is a timing analysis which "focuses not on whether the plaintiff was in fact

26

harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention." *Kansas Judicial Review*, 519 F.3d at 1116.

Generally, ripeness is determined under a two-factor test: (1) the fitness of the issue for judicial resolution and (2) the hardship to the parties of withholding judicial consideration. *Kansas Judicial Review*, 519 F.3d at 1116.   The first factor requires courts "to ask whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."   *Morgan*, 365 F.3d at 890 (internal quotation marks omitted).   The second factor "may be answered by asking whether the challenged action creates a direct and immediate dilemma for the parties." *Morgan*, 365 F.3d at 891.

With respect to RSI's tortious interference claim, RSI's ownership of the domain registration entities is unsettled.   And to the extent that RSI has been harmed by defendants' refusal to transfer these entities, it is unclear why this harm would not be redressed under the claim which seeks transfer of the entities to RSI.   Therefore, because the factual and legal framework underpinning RSI's theory for relief under the tortious interference claim is contingent and speculative, the claim is not fit for judicial resolution.   Furthermore, because there is little chance for hardship resulting from the Court's withholding consideration of this claim, RSI's tortious interference claim is not ripe for review, does not present a justiciable controversy, and must be dismissed.

### E.  RSI's Colorado Consumer Protection Act Claim

RSI's complaint also asserted a claim for deceptive trade practices in violation of the Colorado Consumer Protection Act ("CCPA") against all of the named defendants.

RSI later clarified that it intended to assert this claim against only Vincent Hamm, Aim High!, and 1 Domain Source. *See* Pl.'s Resp. to Def. Vincent Hamm's Mot. at 10; Pl.'s Resp. to Def. Karen Hamm's Mot. at 6; Pl.'s Status Report at 2. Therefore, defendants Karen Hamm and Kaim Chigh are entitled to summary judgment on RSI's claim for deceptive trade practices.

To prove a private cause of action under the CCPA, a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). Defendants argue that RSI's CCPA claim is defective under the first and third elements. According to the defendants, the alleged deceptive trade practices are nothing more than breaches of purported contracts, which are not actionable under the CCPA. *See Rhino Linings USA, Inc.*, 62 P.3d at 148. Second, defendants argue that there is no discernable public impact based on the alleged actions.

The deceptive trade practices alleged by RSI in the complaint are as follows:

- Defendants, through the above-described conduct, have engaged in deceptive trade practices in the course of their business by, among other things, knowingly passing off the domain name registration sites operated by Domain Monkeys LLC, Web Business, LLC and Aim High! dba Get Yer Name, belonging to RSI, as belonging to Vincent Hamm and Aim High!; knowingly making false representations as to the source, sponsorship, approval, or certification of the Domain Registrar Companies by

deliberately changing the color scheme of the web sites used as part of the sites' overall branding; and knowingly making false representations as to the affiliation, connection, or association with or certification by RSI.

- The Defendants have engaged in deceptive trade practices in the course of their business by causing or permitting Vincent Hamm to represent to ICANN that he and/or Vincent Hamm and Karen Hamm were the owners of the registrars Domain Monkeys LLC and Web Business, LLC and entitled to operate and trade using the registrar accreditation held by Aim High! dba Get Yer Name, by failing to disclose that such funding those entities received from the Defendants was provided subject to an agreement with RSI to repay those funds with interest, and by failing to disclose that such funds were in fact repaid in full with an allowance for interest.

- The Defendants have engaged in deceptive trade practices in the course of their business by causing or permitting to be filed with the Colorado Secretary of State annual returns containing false declarations, including that Vincent Hamm was the registered agent of each of the entities Domain Monkeys LLC, Web Business, LLC and Internet Equipment Sales & Holdings, LLC, as from February 5, 2008.

- The Defendants have engaged in deceptive trade practices in the course of their business by causing or permitting to be filed with the Colorado Secretary of State annual returns in the false names of "K Hammsmith" and "J Jockman," and by representing that Vincent Hamm was the registered agent of Internet Name Register, Inc. as from February 5, 2008.

- The Defendants have engaged in deceptive trade practices in the course of their business by causing or permitting to be filed with the Colorado Secretary of State Articles of Dissolution for 1 Domain Source, Ltd. in the false name "Martin Sharrif" on or about August 8, 2007.

Verified Compl. ¶¶ 56-59.  Only the first of these allegations suggests that the

defendants engaged in a deceptive trade practice directed at or accessible to the

public.  The rest have to do with corporate disclosure filings.  RSI has not explained

how such allegedly inaccurate administrative filings fall within the CCPA and its

intended goal of "regulat[ing] commercial activities and practices which, because of

their nature, may prove injurious, offensive, or dangerous to the public," *Rhino Linings*

*USA, Inc.*, 62 P.3d at 146.  More to the point, the great majority of these allegations rely on the incorrect assumption that, at the time the statements were allegedly made, the defendants did not in fact own the entities in question.  RSI once again is basing a claim on its allegation that defendants failed to transfer the domain registration entities and their assets despite the defendants' contractual or other obligations to do so. Therefore, according to RSI, when the defendants represented themselves to the public as the owners of these entities, they stated something that was untrue, which amounted to a deceptive trade practice in violation of the CCPA.

The distinction between an alleged right to own these entities and actual ownership is crucial.  As discussed above, RSI admitted that it was not the actual owner at the time this case was filed.  Only through successful litigation of this case will RSI become the owner.  Therefore, the factual premise underlying RSI's CCPA claim – that the defendants did not own the domain registration companies when it made the representations alleged above – is flawed.

RSI's CCPA claim is also defective under the third element, which considers the public impact of the alleged deceptive trade practice.  There are at least three factors to consult in determining whether a challenged practice has the requisite public impact: (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) the evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future.  *Crowe v. Tull*, 126 P.3d 196, 208 (Colo. 2006).

The segment of the public allegedly impacted by defendants' representations consists of the customers and potential customers of the domain registration entities formed by the defendants.  According to RSI, these individuals were "subject to being deceived about the source, sponsorship, ICANN approval and certification of the domain registrar companies."  Pl.'s Resp. to Def. Vincent Hamm's Mot. at 14.  In other words, these individuals were led to believe that the defendants owned these companies when in fact RSI was the rightful owner.  RSI also contends that these customers were harmed by receiving a product of lesser quality than they would have received from RSI.

This argument, in addition to being illogical, is based purely on speculation at this point.  RSI claims that the customers and potential customers were "subject to" being deceived but has not identified a single individual who was so deceived.  Furthermore, from the perspective of members of the public, they got what they thought they were getting, services from the company with whom they contracted.  The public impact element of the CCPA considers both how "public" the alleged deceptive trade practice was, *see Rhino Linings USA, Inc.*, 62 P.3d at 149 ("[I]f a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA."), and also how impactful, *see Alpine Bank v. Hubbell*, 555 F.3d 1097, 1113 (10th Cir. 2009) (requiring evidence that public was harmed); *NetQuote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1136 (D. Colo. 2007) (citing *Rhino Linings USA, Inc.*, 62 P.3d at 150) (explaining that the public's actual exposure to the alleged misstatements is relevant in determining the public impact).  Therefore, the extent to which members of the public would find the alleged representation material necessarily affects the impact felt.  In scenarios such as

31

the present one, where there is no evidence that any actual member of the identified segment of the public had knowledge or concern regarding the ownership of the domain registration companies, there is not sufficient public impact to support a CCPA claim and summary judgment in favor of defendants Vincent Hamm, Aim High! and 1 Domain Source is appropriate on RSI's CCPA claim.

### F.  RSI's Breach of Fiduciary Duty Claim

In its complaint, RSI asserts a claim for breach of fiduciary duty against two defendants: Vincent Hamm and Karen Hamm.  Only Karen Hamm seeks summary judgment on the claim.  *See* Def. Karen Hamm's Mot. for Sum. J. at 17-19.  The complaint makes the following allegations regarding the breach of fiduciary duty claim against Ms. Hamm:

- Karen Hamm was engaged as a bookkeeper for the RSI business and in breach of her duty to the RSI business failed to notify RSI of accounting irregularities, errors or reporting such other conduct of the Defendants illegal conduct, and misuse of funds which had become known to her.

- Karen Hamm breached her fiduciary duty to RSI by assisting Vincent Hamm in his conduct, in assisting in the concealment of his conduct, in failing to report irregular and erroneous financial transactions, in failing to notify RSI of the excessive payments being made to Kaim Chigh, LLC, despite the fact that she knew or ought to have known that such payments were excessive, in assisting in the preparation of tax returns which sought to claim deductions for losses attributable to the RSI business, despite the fact that she knew or ought to have known that the Defendants had no beneficial interest in the RSI business, in filing such returns or permitting such returns to be filed, and in making or permitting claims to be made as to her own and Aim High!'s alleged ownership interests in parts of the RSI business including Domain Monkeys LLC, Web Business, LLC and Aim High!.

Verified Compl. ¶¶ 24, 70.

These alleged facts have been clarified through the motions for summary judgment, and RSI has explained its theory regarding Ms. Hamm's purported fiduciary duty.  According to that explanation, Ms. Hamm was employed as a bookkeeper by the entities owned and controlled by Mr. Hamm, including the entities to which RSI now claims a right.  Ms. Hamm's position as bookkeeper put her in a position of responsibility and trust with respect to the interests of these entities.  "A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relationship."  *Brodeur v. American Home Assurance Co.*, 169 P.3d 139, 151 (Colo. 2007) (internal alteration marks omitted); *see also Destefano v. Grabrian*, 763 P.2d 275, 284 (Colo. 1988) ("A fiduciary is a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with the undertaking.").  Therefore, RSI argues that Karen Hamm was a fiduciary to these entities.  Because RSI believes itself to be the rightful owner of these entities, it believes it is owed fiduciary duties from Karen Hamm through them.

Apart from its ownership of the domain registration entities, RSI believes that Karen Hamm owes it fiduciary duties through a separate channel.  One of the entities to which Karen Hamm allegedly owes fiduciary duties is Aim High!.  Aim High! purportedly agreed to act as a fiduciary of RSI.  Therefore, RSI theorizes that, as a fiduciary to Aim High! which is a fiduciary of RSI, Karen Hamm had a direct fiduciary relationship to RSI.

"A fiduciary relationship may exist as a matter of law," *Brodeur*, 169 P.3d at 151.  By natural extension, the absence of a fiduciary relationship may be similarly determined.  RSI's theory that Karen Hamm owes it a fiduciary duty because it is the

rightful owner of the entities which employed her fails as a matter of law.  The flaw in RSI's reasoning harkens back to the earlier discussions on this issue: RSI's ownership of these entities has not yet been established.  Therefore, employees of these entities are not subject to fiduciary status vis-a-vis RSI.

RSI's assertion that Karen Hamm was its fiduciary through her relationship with Aim High! is equally unavailing.  RSI has not offered any legal support for its theory, so the Court turns to the narrow issue before it and concludes that in the present situation, Karen Hamm was not required to rise above the conflict of this case.  In other words, because Aim High! contested the existence of its fiduciary obligations to RSI, Karen Hamm was not required to make the legal determination that those duties were properly owed and determine that RSI, not her day-to-day employer, was the rightful object of her loyalties.

Because there is no evidence of a direct relationship between Ms. Hamm and RSI and RSI's theories of an indirect basis for creating a fiduciary relationship are flawed, Ms. Hamm is entitled to summary judgment on RSI's breach of fiduciary duty claim.

### G.  RSI's Unjust Enrichment Claim

In its complaint, RSI asserts a claim for unjust enrichment against Kaim Chigh, the putative owner of real estate located at 7315 Grant Place in Arvada, Colorado. Kaim Chigh leased this property to an entity by the name of Internet Equipment Sales and Holdings, LLC ("IESH") through a written lease executed in 2003.  The listed members and owners of IESH are Vincent, Reva, and Ryan Hamm.  *See* Def. Karen Hamm's Mot. for Sum. J. ¶ 12, *admitted at* Pl.'s Resp. to Def. Karen Hamm's Mot. ¶ 12.

RSI claims that Kaim Chigh charged IESH more than double the market lease rate for the space at the Grant Place property.  Furthermore, because RSI claims that it is the rightful owner of IESH, it claims that it has been harmed by this overcharging.  Finally, by virtue of the alleged overcharging, RSI asks that title in the property be transferred to RSI by way of a constructive trust.

An unjust enrichment claim requires a showing of three elements; "that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying."  *Robinson v. Colorado State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008).

RSI has not made a sufficient showing of the first element, that is, that any benefit received by Kaim Chigh was at RSI's expense.  In response to Kaim Chigh's motion for summary judgment, RSI states that "Hamm charged this exorbitant monthly rent directly to RSI."  Pl.'s Resp. to Def. Karen Hamm's Mot. at 10.  However, RSI has not provided any evidence that RSI in fact paid the rent bill directly.  To the extent that RSI is relying on its alleged ownership of IESH, RSI once again faces ripeness and standing barriers to asserting claims on behalf of an entity before RSI's ownership of that entity has been established.  Furthermore, to the extent that IESH, or someone on its behalf, may attempt to bring an unjust enrichment claim against Kaim Chigh, the lease agreement likely stands in the way of an equitable claim of unjust enrichment.  *Cf. Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009) ("[A] party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any

implied-in-law contract."). Therefore, Kaim Chigh is entitled to summary judgment on RSI's unjust enrichment claim.

### H.  RSI's Sought Declaratory and Injunctive Relief

According to and based on the allegations in its complaint, RSI seeks four declarations from the Court: (1) that "[t]he Defendants owed fiduciary duties to the Plaintiff"; (2) that "[e]ach of the Defendants breached its fiduciary duties to the Plaintiff"; (3) that "Kaim Chigh, LLC is a constructive trustee of the premises situated at 7315 Grant Place, Arvada CO 80002 for RSI and RSI is the true owner of said property and entitled to specific performance to obtain such title"; and (4) that "Defendants are accountable to Plaintiff for all funds derived by them from the RSI business."  Verified Compl. ¶¶ 91, 96.  Pursuant to the discussion above in § II.F of this order, the first and second requests are denied against all defendants except Vincent Hamm.  Pursuant to the discussion above in section II.G of this order, the third request is denied as well. The Court denies defendants' motion for summary judgment on the fourth requested item and withholds judgment on that request until a later date.

RSI also requests that the Court "[e]nter a permanent injunction requiring the Defendants to transfer ownership and control to the Domain Name Registration Assets, the Domain Name Companies, 1 Domain Source Ltd., the premises situated at 7315 Grant Place, Arvada CO 80002, and related assets and cash associated with those entities and assets to RSI."  Verified Compl. ¶ 93.  The question of RSI's entitlement to such equitable relief is premature.  Therefore, the Court denies defendants' motion for summary judgment as to RSI's request for injunctive relief and withholds judgment as to this request until a later date.

## III.  SUMMARY AND CONCLUSION

In accordance with the discussion above, it is **ORDERED** that defendants and third party plaintiffs Vincent Hamm, Aim High!, Inc., and 1 Domain Source, Ltd.'s motion for partial summary judgment [Docket No. 101] and defendants Karen Hamm and Kaim Chigh, LLC's motion for summary judgment [Docket No. 102] are GRANTED in part and DENIED in part:

### Plaintiff RSI's Breach of Contract Claim

Plaintiff RSI's breach of contract claim against defendants 1 Domain Source, Karen Hamm, and Kaim Chigh is DISMISSED in its entirety;

Plaintiff RSI's breach of contract claim against defendant Vincent Hamm is DISMISSED, except as it relates to the May 10, 2004 Aim High! Agreement and the Company Ownership Transfer Agreement;

Defendant Vincent Hamm is entitled to summary judgment on plaintiff RSI's breach of contract claim as it relates to the May 10, 2004 Aim High! Agreement;

Plaintiff RSI's breach of contract claim against defendant Aim High! is DISMISSED, except as it relates to the May 10, 2004 Aim High! Agreement and the Company Ownership Transfer Agreement;

Plaintiff RSI's breach of contract claim proceeds against Vincent Hamm on the Company Ownership Transfer Agreement and against Aim High! on the May 10, 2004 Aim High! Agreement and the Company Ownership Transfer Agreement.

### Plaintiff RSI's Conversion Claim

Plaintiff RSI's conversion claim against defendants Karen Hamm and Kaim

Chigh is DISMISSED;

Plaintiff RSI's conversion claim proceeds against defendants Vincent Hamm,

Aim High!, and 1 Domain Source.

### Plaintiff RSI's Tortious Interference with Prospective Business Advantage Claim

Plaintiff RSI's tortious interference claim against defendants Vincent Hamm, Aim

High!, 1 Domain Source, Karen Hamm, and Kaim Chigh is DISMISSED;

Plaintiff RSI's tortious interference claim is no longer at issue in this case.

### Plaintiff RSI's Deceptive Trade Practices under the Colorado Consumer Protection Act Claim

Plaintiff RSI's deceptive trade practices claim against defendants Karen Hamm

and Kaim Chigh is DISMISSED;

Defendants Vincent Hamm, Aim High!, Inc., and 1 Domain Source, Ltd. are

entitled to summary judgment on plaintiff RSI's deceptive trade practices claim;

Plaintiff RSI's deceptive trade practices claim is no longer at issue in this case.

### Plaintiff RSI's Breach of Fiduciary Duty Claim

Defendant Karen Hamm is entitled to summary judgment on plaintiff RSI's

breach of fiduciary duty claim;

Plaintiff RSI's breach of fiduciary duty claim proceeds against defendant Vincent

Hamm.

### Plaintiff RSI's Unjust Enrichment Claims

Defendant Kaim Chigh is entitled to summary judgment on plaintiff RSI's unjust enrichment claim;

Plaintiff RSI's separate unjust enrichment claim proceeds against defendant 1 Domain Source.

### Plaintiff RSI's Claim for Declaratory Judgment

Defendants Aim High!, 1 Domain Source, Karen Hamm, and Kaim Chigh are entitled to summary judgment on plaintiff RSI's request for a declaration that these defendants owed fiduciary duties to the plaintiff;

Ruling on plaintiff RSI's request for a declaration that defendant Vincent Hamm owed fiduciary duties to the plaintiff is WITHHELD;

Defendants Aim High!, 1 Domain Source, Karen Hamm, and Kaim Chigh are entitled to summary judgment on plaintiff RSI's request for a declaration that these defendants breached fiduciary duties to the plaintiff;

Ruling on plaintiff RSI's request for a declaration that defendant Vincent Hamm breached fiduciary duties to the plaintiff is WITHHELD;

Defendant Kaim Chigh is entitled to summary judgment on plaintiff RSI's request for a declaration that this defendant is a constructive trustee of the premises situated at 7315 Grant Place, Arvada CO 80002 for RSI and RSI is the true owner of said property and entitled to specific performance to obtain such title;

Defendants Karen Hamm and Kaim Chigh are entitled to summary judgment on plaintiff RSI's request for a declaration that these defendants are accountable to plaintiff for all funds derived by them from the RSI business;

Ruling on plaintiff RSI's request for a declaration that defendants Vincent Hamm, Aim High!, and 1 Domain Source are accountable to plaintiff for all funds derived by them from the RSI business is WITHHELD.

It is further **ORDERED** that any Final Judgment entered upon resolution of all claims against all parties shall include judgment in favor of the defendants and against the plaintiff as detailed above.

It is further **ORDERED** that the Clerk of the Court shall terminate plaintiffs Vincent Hamm, Aim High!, Inc., and 1 Domain Source, Ltd.'s motion for partial summary judgment [Docket No. 101] and defendants Karen Hamm and Kaim Chigh, LLC's motion for summary judgment [Docket No. 102].  Any items about which the Court has withheld judgment shall be dealt with at a later date, as necessary.

DATED January 20, 2010.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge