IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00495-PAB-MJW

REGISTRY SYSTEMS INTERNATIONAL, LTD.,

    Plaintiff,

v.

VINCENT HAMM,
KAREN HAMM,
AIM HIGH!, INC., and
1 DOMAIN SOURCE, LTD.,

    Defendants and Third Party Plaintiffs,

v.

EDWARD J. SWEENEY,
CHARLES A SWEENEY, and
CAPITAL NETWORKS, PTY., LTD., A/K/A PACNAMES, LTD.,

    Third Party Defendants.

---

## ORDER

---

This matter is before the Court on the Motion for Correction of Final Judgment [Docket No. 400] filed by defendant Vincent Hamm ("Hamm") and the Motion to Alter or Amend Judgment [Docket No. 401] filed by plaintiff Registry Systems International, Ltd. ("RSI") and third-party defendant Edward Sweeney. The motions are fully briefed and ripe for disposition.

## I. BACKGROUND

A six-day jury trial took place in this case beginning on April 12, 2010. As is relevant to the disposition of these motions, the jury found in favor of RSI on its

conversion claim against Hamm, awarding RSI $212,685 in damages, but also found that RSI contributed to the conversion damages RSI incurred. The jury allocated 50% of the fault regarding the conversion claim to Hamm, 25% to RSI, and 25% to Edward Sweeney. The jury also found in favor of RSI on its breach of fiduciary duty claim against Hamm, awarding RSI $52,453 in damages.

As for Hamm's and defendant Aim High!'s claims, the jury found in their favor on their breach of contract claim against RSI, awarding $44,315 in damages.

Both sides ask the Court to alter or amend the Final Judgment [Docket No. 393]. Hamm requests that, pursuant to the jury's allocation of fault on RSI's conversion claim, the Court alter the final judgment to reflect an award of damages of $106,432.50 against him. Docket No. 400 at 3. RSI and Sweeney request that the Court (1) alter the final judgment to correct the jury's allocation of fault on their conversion claim against Hamm, (2) vacate the damages award to Hamm and Aim High! on their breach of contract counterclaim against RSI, and (3) award RSI attorney's fees for RSI's breach of fiduciary duty claim against Hamm. Docket No. 401 at 2.

## II. STANDARD OF REVIEW

A litigant subject to an adverse judgment, who seeks reconsideration by the district court of that adverse judgment, may file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b). Under Rule 59(e), a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. Fed. R. Civ. P. 59(e). In this case, the final judgment [Docket No. 393] entered on February 1, 2011, and the parties filed their motions to alter or amend the judgment [Docket Nos.

2

400, 401] on March 1, 2011. The motions were filed within twenty-eight days after judgment entered and were therefore timely.

In order for a party to succeed on a Rule 59 motion, the party must show either "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). However, a Rule 59(e) motion is not an opportunity to rehash arguments previously addressed or to advance new arguments that could have been raised previously. *Id*. Finally, the decision to grant a Rule 59(e) motion is within the discretion of the district court. *Brown v. Presbyterian Healthcare Serv.*, 101 F.3d 1324, 1332 (10th Cir. 1996) ("[I]n determining whether to grant or deny a Rule 59(e) motion to alter or amend judgment, the district court is vested with considerable discretion.").

### III. ANALYSIS

#### A. Allocation of Fault

Hamm asks the Court to amend the final judgment to reduce the damages award on RSI's conversion claim by fifty percent, from $212,685.00 to $106,342.50, pursuant to the jury's allocation of fault. Docket No. 400 at 1-2. Hamm argues that, under Colorado's pro rata apportionment statute, Colo. Rev. Stat. § 13-21-111.5(1), the jury allocated fault on the conversion claim 25% for RSI, 25% for Sweeney, and 50% for Hamm. *Id*. at 2.

Hamm relies primarily on the Colorado Supreme Court's decision in *Slack v. Farmers Ins. Exch.*, 5 P.3d 280 (Colo. 2000), to support the argument that Colorado's

pro rata apportionment statute applies to both intentional and negligent torts. Docket No. 414 at 7. Hamm argues that the General Assembly's purpose in adopting the pro rata apportionment statute was to ensure that parties would not be liable for more than their fair share of damages. *Id*. Therefore, he contends that it follows naturally that the pro rata apportionment statute envisions the apportionment of fault between a plaintiff and a defendant with respect to intentional torts just as it does with negligent torts. *Id*.

In response, RSI and Sweeney contend that the allocation of fault to RSI and Sweeney is improper as a matter of Colorado law because comparative fault principles do not apply to intentional torts such as conversion. Docket No. 408 at 3. Therefore, RSI and Sweeney contend that Jury Instruction No. 46[1], was contrary to Colorado law and request that the Court alter the judgment pursuant to Rule 59(e). *Id*. at 4.

Contrary to Hamm's argument, the holding in *Slack* does not support apportioning fault to a plaintiff when a plaintiff asserts an intentional tort against a defendant. The court in *Slack* was faced with the issue of whether "a jury [could] apportion fault among tortfeasors who were merely negligent and others who intended

---

[1] Instruction 46, which pertained to the apportionment of fault, states as follows:

"If you find that RSI proved by a preponderance of the evidence that it suffered damages resulting from its claims of breach of fiduciary duty, conversion, or unjust enrichment, you must next consider whether others also were at fault. If you find that RSI, Vincent Hamm, Aim High, 1 Domain Source, Kim Keeling-Hamm, Edward Sweeney, or Capital Networks PTY also were at fault with respect to RSI's damages, then you must determine to what extent the conduct of each contributed to RSI's damages, expressed as a percentage of 100 percent.

If RSI is allowed to recover, the total damages you award to RSI against the defendant of each claim will be reduced by the Court by the percentage of RSI's fault and by the percentage of the fault attributed to the other parties listed." Docket No. 374 at 51.

to do wrong." 5 P.3d at 284. The court found that there was no reason to "suggest that the General Assembly intended to expose a negligent tortfeasor to greater liability when his conduct was coupled with that of an intentional tortfeasor, than when his conduct combined with that of another negligent torfeasor." Id. at 286. Accordingly, the court found that the pro rata apportionment statute applied "even when one of several tortfeasors commits an intentional tort that contributes to [a plaintiff's] indivisible injury." Id. However, this case does not present a situation where the jury was asked to apportion comparative fault between negligent and intentional tortfeasors. The Colorado Court of Appeals' decision in Toothman v. Freeborn & Peters, 80 P.3d 804 (Colo. App. 2002), is more analogous. In Toothman, the plaintiffs brought a putative class action suit pursuant to the Colorado Securities Act, Colo. Rev. Stat. § 11-51-101, et seq., and alleged that defendants acted with "the intent to defraud investors." Id. at 807. The district judge refused to certify a putative class action because he found that the apportionment of fault between plaintiffs and defendants allowed individual issues to predominate over common issues. Id. at 815. Because of the pro rata apportionment statute, the district judge found that, even though plaintiffs were suing defendants based on intentional conduct, the statute required the apportionment of fault between each individual plaintiff and defendant. Id. In reversing the district judge, the court of appeals found that the ruling in Slack did not "mandate apportionment among plaintiffs when the underlying action alleges intentional, as opposed to negligent, conduct by the defendants." Id. at 816. The court of appeals noted that "nothing in the [pro rata apportionment statute shows] that the General Assembly intended a plaintiff's

fault or degree of culpability to be considered when the defendants are alleged to have committed intentional torts." *Id.*

In this case, RSI asserted a claim for conversion against Hamm. *See* Docket No. 1 at 16. Conversion is an intentional tort. *See Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1199 (Colo. App. 2009). Therefore, based on *Toothman,* the pro rata apportionment statute would not allocate fault to RSI. *Toothman*, 80 P.3d at 816. As a result, the Court agrees with RSI and Sweeney and finds that Jury Instruction No. 46, Docket No. 374 at 51, and Question 17 of Special Verdict Form A[2], Docket No. 373-1 at 4, were erroneously given to the jury.[3] Given that the jury considered the erroneous instruction and verdict form, the Court next determines the appropriate remedy for such error.

---

[2]Question No. 17 of Special Verdict Form A, as completed by the jury, reads as follows:

QUESTION NO. 17: With regard to RSI's conversion claim, taking as 100 percent the combined fault of all parties you find were at fault, what percentage of fault, if any, was caused by Vincent Hamm, Aim High, 1 Domain Source, RSI, Edward Sweeney, and Kim Keeling-Hamm. Enter the figure of zero "0" for any party you decide was not at fault or whose fault you decide was not a cause of any of RSI's damages.

    ANSWER NO. 17:
| | |
|---|---|
| Percentage charged to Vincent Hamm | 50% |
| Percentage charged to Aim High | Ø% |
| Percentage charged to 1 Domain Source | Ø% |
| Percentage charged to RSI | 25% |
| Percentage charged to Sweeney | 25% |
| Percentage charged to Kim Keeling-Hamm | Ø% |

[3]To the extent that Hamm argues that RSI and Sweeney waived the right to object to the jury instruction, the Court finds this argument unconvincing. Even if they did waive the right to object, an appellate court could nevertheless review the instruction under the plain error standard. *See Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1179 (10th Cir. 2005).


### B. Jury Instructions

Ordinarily, when a jury instruction is challenged as legally erroneous, a new trial may be warranted if the Court is convinced that the "jury might have based its verdict on the erroneously given instruction." *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1242 (10th Cir. 2002). However, RSI and Sweeney do not request a new trial; rather, they state that "a new trial is not necessary in this case . . . [because] [t]he Court has the information that is necessary to correct the error." Docket No. 417 at 5. Hamm does not request a new trial either. Docket No. 414 at 10. Given that neither side requests a new trial, the question then becomes how to correct the error and whether doing so would cause prejudice to one side or the other.

An instructional error requires reversal only if the error is determined to have been prejudicial based on the record as a whole. *See Bohrer v. DeHart*, 961 P.2d 472, 476 (Colo. 1998) (under Colorado law, a jury verdict may not be set aside based upon trial error unless the error is inconsistent with substantial justice). In addition, harmless error analysis generally applies in civil cases involving jury instruction error. *Bangert Bros. Constr. Co., Inc. v. Kiewit W. Co.*, 310 F.3d 1278, 1290 (10th Cir. 2002) (applying harmless error analysis to a jury instruction error related to Colorado's pro rata apportionment statute).

The Court finds that Jury Instruction No. 46 and Question No. 17 of Special Verdict Form A did not prejudice Hamm. As required by Colorado's pro rata apportionment statute, the Court utilized special verdict forms. *See generally* Docket No. 373-1. The instructions together with the verdict forms appropriately allowed the

jury to differentiate the liability of each defendant and to separately determine the amount of damages for which that defendant was responsible.  Hamm's liability for conversion was addressed in Jury Instruction No. 11, Docket No. 374 at 16, Jury Instruction No. 18, *id*. at 23, and Question No. 1 of Special Verdict Form A.[4]  Docket No. 373-1 at 1.  The jury found that Hamm was liable for $212,685.00 in damages on the conversion claim.[5]  Docket No. 373-1 at 2.  Therefore, the Court concludes that the jury determined both liability and damages as to Hamm on the conversion claim without the danger of confusing liability with comparative fault.  *See Loughridge v. Chiles Power Supply Co., Inc.,* 431 F.3d 1268, 1274-75 (10th Cir. 2005) (under Rule 59(e) "[w]hen reviewing claims that a jury verdict is inconsistent, [the reviewing court] must accept any reasonable view of the case that makes the jury's answers consistent").  Considering the jury instructions and the verdict forms as a whole, the Court finds that the instruction error was harmless and did not prejudice Hamm.

As Hamm points out, despite the jury's apportionment of fault in response to Question No. 17 on Special Verdict Form A, the final judgment awarded $212,685.00 to RSI and against Hamm.  The fact that it did so is why Hamm filed his motion to correct

---

[4]   QUESTION NO. 1: Did RSI prove by a preponderance of the evidence its conversion claim against Vincent Hamm?

   ANSWER NO. 1: <u>Yes</u>.

[5]   QUESTION NO. 3: What is the total amount of RSI's actual damages resulting from its claim of conversion against Vincent Hamm?  Actual damages are those damages described in Instruction No. 16.  You should answer "0" if you determine there were none.

   ANSWER NO. 3: <u>$212,685.00</u>

the final judgment. However, given that the final judgment correctly, as determined herein, awarded the full amount of damages to RSI without being reduced by the jury's apportionment of fault, there is no need to correct the final judgment pursuant to RSI and Sweeney's request. This is especially true given that the final judgment does not refer to the apportionment of fault. RSI's and Sweeney's motion to correct the final judgment as to the conversion claim will be denied.

### C.  Rule 50(b) Motion

RSI asserts that it made an unsuccessful Rule 50(a) motion for judgment as a matter of law concerning Hamm and Aim High!'s breach of contract counterclaim. Docket No. 401 at 5. RSI states that it is now renewing its motion because the evidence at trial was insufficient to support the jury's verdict on the breach of contract counterclaim. *Id*. at 6.

Before reaching the merits, the Court must resolve whether RSI is moving for a renewed motion for a judgment as a matter of law under Rule 50(b) or whether RSI is seeking to challenge the Court's denial of a Rule 50(a) motion under Rule 59(e). This distinction is important because, although the same standard applies for motions filed under Rules 50(a) and 50(b), a party cannot assert a renewed motion under Rule 50(b) if it presents grounds for relief not asserted in the original Rule 50(a) motion. *See Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 738-39 (10th Cir. 2007) (a "pre-verdict Rule 50(a) motion" is a "prerequisite to a post-verdict motion under Rule 50(b).").

After reviewing the trial transcript, the Court finds that the arguments currently asserted by RSI were not presented in RSI's Rule 50(a) motion at the close of evidence. *See* Docket No. 360 at 228-238. In its Rule 50(a) motion, RSI moved for judgment as a matter of law on defendants' fourth counterclaim for intentional interference with contractual relations and seventh counterclaim for third-party liability involving Kim Keeling. Docket No. 360 at 229. RSI, however, did not move for a judgment as a matter of law on defendants' first counterclaim for breach of contract. *See id*. Accordingly, RSI's challenge to the jury award of $44,315 in damages for Hamm and/or Aim High! for RSI's breach of the contract will be reviewed under a Rule 59(e) standard.

To succeed under Rule 59(e), RSI must show either an intervening change of law, new evidence previously unavailable, or a clear error of law. *See Servants of the Paraclete*, 204 F.3d at 1012. The Court finds that RSI fails to meet this burden. RSI does not argue that there has been an intervening change of law, nor does it present the Court with new evidence. Additionally, RSI had sufficient opportunity to cross-examine Hamm with regard to the invoices presented at trial, *see* Docket No. 360 at 166-219, argue the lack of evidence to the jury during closing argument, or attack the sufficiency of evidence in a Rule 50(a) motion at the close of evidence. Yet, it did none of the above. Thus, because RSI's challenge is inherently factual, the Court finds no clear error of law and denies RSI's motion to reconsider the jury's verdict on the breach of contract counterclaim.

### D.  Attorney's Fees

RSI also requests that the Court amend the final judgment to include an award of attorney's fees to RSI on its breach of fiduciary duty claim against Hamm.  *See* Docket No. 401 at 6-7.  RSI explains that it "does not claim attorneys' fees as an element of its damages subject to determination by a jury," but rather as an exception to the American Rule regarding attorney's fees recognized under Colorado law in breach of trust cases. Docket No. 417 at 6.  RSI asserts that the "judgment failed to address RSI's claim for fees, and effectively denied it."  *Id.* at 6.

Rule 54(d)(2) of the Federal Rules of Civil Procedure states that a "claim for attorney's fees" must be made "by motion" and "be filed no later than 14 days after the entry of judgment."  RSI is correct that the 14 day period does not begin to run until after the Court rules on the Rule 59(e) motions.  *See Weyant v Okst,* 198 F.3d 311 (2d Cir. 1999)*.*  However, the Court does not construe RSI's present motion as a Rule 54(d)(2) motion for attorney's fees.  RSI argues that the final judgment should have "addressed" RSI's claim for fees, which presumably would have made a separate Rule 54(d) motion unnecessary.  Docket No. 401 at 6.  RSI's "claim" for attorney's fees consisted of a reference in the final pretrial order that it sought "injunctive relief, declaratory relief, damages, attorneys' fees, and costs."  Docket No. 138 at 5.  This request for relief was not tied to any particular claim.  Given the generality of RSI's reference to attorney's fees in the final pretrial order, it is hard to imagine how the final judgment could have contemplated a reference to attorney's fees on RSI's breach of fiduciary duty claim against Hamm.  Moreover, as RSI acknowledges, its attorney's fee

claim was not a jury issue, but rather is a Rule 54(d)(2) claim.  As such, it would not be addressed in the final judgment, but instead would be resolved after judgment entered.  Thus, RSI is incorrect that the final judgment should be amended to award attorney's fees to RSI on its breach of fiduciary duty claim against Hamm.  That aspect of RSI's and Sweeney's motion will be denied.

## IV.  CONCLUSION

Accordingly, it is

**ORDERED** that Defendant Vincent Hamm's Motion for Correction of Final Judgment [Docket No. 400] is **DENIED**.  It is further

**ORDERED** that Plaintiff Registry Systems International, Ltd. and Third-Party Defendant Edward Sweeney's Motion to Alter or Amend Judgment and Renewed Motion for Judgment as a Matter of Law [Docket No. 401] is **GRANTED** in part and **DENIED** in part as indicated in this Order.

DATED September 28, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge